1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DONTAY HAYES,
CDCR #K-88757,

                                        Plaintiff,

                    vs.

JOHN DOVEY; JEANNE WOODFORD;
J.G. GIURBINO; M.E. BOURLAND;
G.J. JANDA; WENDY STILL;
JAMES TILTON,

                                        Defendants.

Civil No.    09-1016 BTM (RBB)

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS TO DISMISS
PLAINTIFF'S AMENDED
COMPLAINT PURSUANT
TO FED.R.CIV.P. 12(b)(6)**

**[Doc. Nos. 45, 49]**

        In this prisoner civil rights case, Dontay Hayes ("Plaintiff"), is proceeding in pro se and *in forma pauperis* pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a).  Defendants Bourland, Giurbino, Janda and Tilton have filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to FED.R.CIV.P. 12(b)(6) [Doc. No. 49].  Defendant Woodford filed a separate Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 45].  Plaintiff has filed a Response in Opposition to both Motions [Doc. No. 51], to which Defendants have filed their Replies [Doc. Nos. 52, 54].

/ / /

-1-

**I.     Procedural Background**

In his original Complaint, Plaintiff alleged that his Eighth Amendment right to be free from cruel and unusual punishment was violated when Defendants Dovey, Woodford, Giurbino, Bourland, Janda and Still deprived him of outdoor exercise for approximately nine months while Calipatria State Prison ("CAL") was on lockdown. *See* Compl. [Doc. No. 1] at 3.  On April 22, 2010, this Court granted in part and denied in part Defendants' Motions to Dismiss pursuant to FED.R.CIV.P. 12(b)(6).  *See* April 22, 2010 Order [Doc. No. 39].  Specifically, the Court dismissed Plaintiff's claims against all Defendants to the extent Plaintiff sought damages for acts taken in their official capacity, and all claims against Defendants Still, Dovey and Woodford for failure to allege any individual liability for violating Plaintiff's Eighth Amendment rights. *Id.* at 3, 6-7, 9.  However, the Court declined to dismiss Plaintiff's Eighth Amendment claims against Defendants Janda and Bourland, finding that Plaintiff had adequately pleaded an Eighth Amendment claim against them based on their alleged failures to provide him with outdoor exercise during CAL's August 2005 through May 2006 lockdown, and further denied Defendants Giurbino, Janda and Bourland's claims of qualified immunity. *Id.* at 6-9.  The Court further provided Plaintiff with the option of either filing an Amended Complaint or proceeding with his Eighth Amendment claims as alleged against Defendants Giurbino, Janda and Bourland only. *Id.* at 9.

Plaintiff elected to amend, and on June 18, 2010, filed an Amended Complaint ("FAC") which re-alleges, almost verbatim, his Eighth Amendment outdoor exercise claims against Defendants Woodford, Bourland, Giurbino and Janda.  Plaintiff's First Amended Complaint also adds James Tilton as a Defendant, but it omits previously named Defendants Dovey and Still.[1]

**II.     Factual Background**

In his Amended Complaint, as in his original, Plaintiff alleges that Defendants imposed cruel and unusual punishment upon him when they locked down the general population at CAL after a staff assault and, as a result, "confined [him] to a double bunk cell twenty-four (24) hours

---

[1] Because Plaintiff has failed to re-name these Defendants and his Amended Complaint includes no allegations against them, all claims as to Defendants Dovey and Still have been waived. *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

a day, seven days a week," from August 2005 through May 2006. FAC at 4, 6, 10. Plaintiff contends he was permitted outside his cell during that time only to shower, "98% of the time in restraints," or for approved medical, dental or mental health care or law library access. *Id.* at 4. Plaintiff claims there "was a period in March when [he] was allowed to exercise outdoors once," but that as a result of being deprived of outdoor exercise for nearly nine months, he "suffered headaches, muscle cramps, stress, anxiety and depression." *Id.*

Plaintiff further alleges that the "disturbance" which prompted the lockdown was "contained and controlled by October 10, 2005," and as a result, "the administration ... beg[a]n to ease restrictions." *Id.* at 6. For example, Plaintiff alleges by November 5, 2005, "interviews had already been conducted," he and other critical workers were permitted to report to their assignments, and canteen and quarterly package privileges were resumed. *Id.* However, outdoor exercise continued to be denied Plaintiff and others even though they were "not part of the investigation" and "deemed [members of] a 'non-[a]ffected' race." *Id.* Plaintiff claims that Defendants continued the deprivation of outdoor exercise for a prolonged period "in bad faith" and "not to prevent a disturbance," but instead, "as a means to punish" and "deter[] future staff assaults by subjecting inmates to such extreme suffering that they would not want another period of lockdown." *Id.* at 6, 7, 10.[2]

Plaintiff seeks both injunctive relief prohibiting Defendants "from continuing to use a basic human necessity as a tool to punish inmates," as well as general and punitive damages "no less than $250,000.00." *Id.* at 13.

## III. Defendants' Motion to Dismiss Plaintiff's Amended Complaint

Defendants Janda, Giurbino, Bourland and Tilton seek dismissal of Plaintiff's Amended Complaint on the grounds that: (1) Plaintiff fails to state an Eighth Amendment claim against

---

[2] To the extent Plaintiff makes further allegations related to Defendants' "bad faith" in his Opposition, the Court cannot and does not consider them. *See Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 ("The focus of any Rule 12(b)(6) dismissal ... is the complaint."). This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to FED.R.CIV.P. 12(b)(6). *Id.* (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)); 2 Moore's Federal Practice, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

Defendants Bourland and Janda because he includes allegations which show they "did not personally have the power to impose the conditions Plaintiff complains of," *see* Def. Bourland, Janda, Giurbino and Tilton's Mem. of P&As in Supp. of Mot. to Dismiss [Doc. No. 49-1] at 8-11; (2) Plaintiff fails to state a claim against Tilton because he claims only that Tilton "continued the last weeks of [the] deprivation," but does not allege facts sufficient to show how long Tilton personally deprived Plaintiff of outdoor exercise after replacing Defendant Woodford as Director (or Secretary) of the California Department of Corrections and Rehabilitation ("CDCR"), *id.* at 12-14; and (3) regardless of any Eighth Amendment violation, all of them are entitled to qualified immunity. *Id.* at 14-18. Defendant Woodford, for his part, moves to dismiss solely on qualified immunity grounds. *See* Woodford's Mem. of P&As in Supp. of Mot. to Dismiss [Doc. No. 45-1] at 3-6.

## A.   FED.R.CIV.P. 12(b)(6) Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

In addition, claims asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972); *Erickson*, 551 U.S. at 94. Because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings, [courts] continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside  the pleadings, except for exhibits which are attached. *See* FED.R.CIV.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Jacobellis v. State Farm Fire & Casualty Co.*, 120 F.3d 171, 172 (9th Cir. 1997); *Allarcom Pay Television Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider*, 151 F.3d at 1197 n.1. The court may also review "materials of which the court may take judicial notice." *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), including public records and "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. Nov. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

/ / /

**B.      Eighth Amendment Deprivation of Exercise**

Prison officials may violate the Eight Amendment's prohibition on cruel and unusual punishments if they deprive the inmate of "a single, identifiable human need such as food, warmth or *exercise*." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis added); *Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010) ("[E]xercise if one of the most basic human necessities protected by the Eighth Amendment.").

To sufficiently allege an  Eighth Amendment violation, however, the inmate must "objectively show that he was deprived of something 'sufficiently serious,'" and "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"[O]rdinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes. *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993).  A prohibition on outdoor exercise of six weeks is a "sufficiently serious" deprivation to support an Eighth Amendment claim.  *See, e.g., Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc); *Allen v. Sakai*, 48 F.3d 1082, 1086 (1994).

If the inmate alleges facts sufficient to show that his deprivation was objectively sufficiently serious, he must next "make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." *Foster*, 554 F.3d at 812 (quoting *Farmer*, 511 U.S. at 834).  Deliberate indifference involves a two part inquiry.  First, the inmate must show that the prison officials were aware of a "substantial risk of serious harm." *Thomas*, 611 F.3d at 1150 (quoting *Farmer*, 511 U.S. at 837).  This part of the inquiry may be satisfied if plaintiff "shows that the risk posed by the deprivation is obvious." *Id.*  Second, the inmate must "show that the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk." *Id.* (quoting *Farmer,* 511 U.S. at 844).

Thus, the Ninth Circuit has specifically identified these types of conditions claims as "context-sensitive," *Richardson v. Runnels*, 594 F.3d 666, 673 (9th Cir. 2010), for they require consideration of the "individual facts of each case," *id.*, including the length and severity of the

deprivation, the circumstances giving rise to it, and the deference owed to prison officials charged with both a "duty to keep inmates safe" and the need to establish order and security, which must be "balance[d] ... against other obligations that our laws impose." *See Norwood v. Vance*, 591 F.3d 1062, 1068-1070 (9th Cir. 2010), *pet. for cert. filed*, 78 U.S.L.W. 3612 (April 7, 2010) (No. 09-1215) (hereafter "*Norwood*"). In short, because "a prisoner's right to outdoor exercise is [not] absolute and indefeasible, [nor does] it trump all other considerations," *id.* at 1068, it usually "require[s] a full consideration of context, and thus, a fully developed record." *Richardson*, 594 F.3d at 672 (citing *Norwood*, 591 F.3d 1062).

### 1. Defendants Janda and Bourland – No Authority

Defendants Janda and Bourland move to dismiss Plaintiff's Eighth Amendment allegations, as they did in their previous Motion to Dismiss, on grounds that "there is sufficient information in the FAC from which the Court can determine that they did not have the authority to circumvent or overrule the judgments of CDCR Director Woodford and Giurbino, and therefore did not personally have the power to impose the conditions Plaintiff complains of." Def. Bourland, Janda, Giurbino and Tilton's Mem. of P&As in Supp. of Mot. to Dismiss at 8-11. Specifically, Janda and Bourland claim that because Plaintiff refers to CAL. CODE REGS., tit. 15 § 3383(b) and (d) in his Amended Complaint, the prison regulations which together identify the Warden and Director of the CDCR as the persons with the authority to impose, authorize and maintain lockdowns during "states of emergency," his own pleading shows "that all other persons lacked the authority to override these decisions." *Id.* at 11.

The Court disagrees. A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)

1  (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th

2  Cir. 1986).

3      Here, while Plaintiff *does* assert that Defendants Woodford, Tilton and Giurbino declared

4  and implemented the "state of emergency" procedures which caused the denial of outdoor

5  exercise during the periods of lockdown which ensued, *see* FAC at 7-8, he further alleges

6  Defendants Janda and Bourland, who were the Associate and Chief Deputy Wardens at CAL at

7  the time, knew of his deprivation based on a CDC 602 inmate appeal Plaintiff submitted, and

8  thus, "w[ere] able to relieve Plaintiff's pain and suffering" and through the grievance process

9  were "able to allow [him] outdoor exercise opportunities." FAC at 2, 3.

10      Further, while CAL. CODE REGS., tit. 15 § 3383(b) and (d) *do* place the power to declare

11  and approve a "state of emergency" and its attendant restrictive conditions in the hands of the

12  Director/Secretary of the CDCR, subsection (d) further requires that "[d]uring the state of

13  emergency, the cause *and effect* shall be constantly reviewed and evaluated by the institution

14  head or regional parole administrator/deputy director, DAPO [Division of Adult Parole

15  Operations], *through appropriate staff*." CAL. CODE REGS., tit. 15 § 3383(d) (emphasis added).

16  Thus, Defendants go too far when they argue that CAL. CODE REGS., tit. 15 § 3383 "is sufficient

17  to show that all other persons lacked the authority to override the[] decisions" of Defendants

18  Woodford and Giurbino, who had the regulatory power to declare a "state of emergency." In

19  fact, while the regulation places the power to declare a state of emergency and to "temporarily

20  suspend any nonessential operation, procedure, service or function ... in order to prevent,

21  contain, or control a disturbance," in the hands of "the institution head," *id.* § 3383(a), and

22  requires the Secretary's approval when certain lockdown restrictions are to exceed 24 or 72

23  hours, *id.* § 3383(b), it also requires that "appropriate staff" at the institutional level "constantly

24  review and evaluate" the need for continued emergency restrictions. CAL. CODE REGS., tit. 15

25  § 3383(d). This is the basis of Plaintiff's suit, for he does not challenge the initial declaration

26  of emergency and attendant lockdown, but rather, claims his Eighth Amendment rights were

27  violated when Defendants' continued the lockdown to deprive him of outdoor exercise "long

28  / / /

1  after the emergency was contained" and purely as a means to "punish" and "deter" him and

2  others "who were not a part of the investigation." FAC at 7, 10.

3      Finally, Defendants have not shown that as the Associate and Chief Deputy Wardens at

4  CAL at the time Plaintiff submitted his CDC 602 administrative grievances, Janda and Bourland

5  were powerless to address Plaintiff's concerns regarding the *effect* of the prolonged denial of

6  outdoor exercise or to provide him with some alternative means of exercise which would not

7  threaten security under the circumstances. *See* 15 CAL. CODE REGS., tit. 15 § 3084.5(e)(1)

8  (providing that the "Second Level review shall be conducted by the institution head or regional

9  parole administrator, or their designee."). Bourland and Janda cite *Shehee v. Lutrell*, 199 F.3d

10  295 (6th Cir. 1999), to argue that "[w]here a prison official's only involvement in the allegedly

11  unlawful conduct is the denial of an administrative grievance, the causation element required to

12  sustain a section 1983 claim is lacking." *See* Defs.' Bourland, Janda, Giurbino and Tilton's

13  Mem. of P&As in Supp. of Mot. to Dismiss at 12.

14      However, the Court finds *Shehee* distinguishable and unpersuasive. In *Shehee*, the

15  plaintiff alleged several defendants who "were not involved in Shehee's termination from his

16  commissary job" were liable for retaliating against him even though "their only roles ...

17  involve[d] the denial of administrative grievances or the failure to act." 199 F.3d at 300.

18  Because Shehee included "no allegation that any of these defendants directly participated,

19  encouraged, authorized or acquiesced in the claimed retaliatory acts against [him]," and because

20  Sixth Circuit precedent provided that "§ 1983 must be based on active unconstitutional behavior

21  and cannot be based upon 'a mere failure to act,'" the Sixth Circuit found Shehee failed to state

22  a retaliation claim under § 1983. *Id.* (citing *Salehpour v. University of Tennessee*, 159 F.3d 199,

23  206 (6th Cir. 1998)).

24      Unlike the plaintiff in *Shehee*, Plaintiff does allege that Bourland and Janda were both

25  aware he was subject to prolonged lack of outdoor exercise, that they were "responsible to

26  provide [him] with outdoor exercise," and that they "could have prevented [his] suffering by

27  providing outdoor exercise opportunities" via the CDC 602 administrative appeal procedure.

28  Plaintiff specifically claims Bourland and Janda by their "actions or inactions," failed to alleviate

his suffering. FAC at 8. Moreover, under Ninth Circuit law, the failure to act can form the basis of a § 1983 claim. *See Leer*, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts *or omissions* are alleged to have caused a constitutional deprivation.") (emphasis added); *see also Farmer*, 511 U.S. at 841 ( Eighth Amendment's deliberate indifference requirements may be satisfied if prison officials "acted *or failed to act* despite ... knowledge of a substantial risk of serious harm.") (emphasis added).

Thus, while Defendants Bourland and Janda argue their denial of Plaintiff's CDC 602 grievance is insufficient to show that they "could have caused the deprivation he complains of," *see* Defs.' Bourland, Janda, Giurbino and Tilton's Mem. of P&As in Supp. of Mot. to Dismiss at 12, the Court finds Plaintiff has sufficiently alleged that both Defendants Bourland and Janda knew about his prolonged lack of exercise and failed to address the deprivation, either by directly rejecting his CDC 602 grievance or by personally refusing to alleviate the adverse physical effects the prolonged lockdowns had upon him. *See Johnson*, 588 F.2d at 743; *Leer*, 844 F.2d at 633.

For these reasons, Defendant Janda and Bourland's Motion to Dismiss Plaintiff's Amended Complaint is DENIED.

## 2.     Defendant Tilton – Insufficient Time

Defendants further argue Plaintiff's allegations against Tilton, in his capacity as "successor" to Defendant Woodford, the Secretary of the CDCR, are insufficient to state an Eighth Amendement claim because Plaintiff asserts only that Tilton "took over from April 2006 and continued the last weeks of Plaintiff's deprivation." FAC at 2, 7. "With respect to Tilton," Defendants argue, the issue is not whether he had the authority to lift the state of emergency," but rather, "whether subjecting prisoners to lockdown conditions for a period of "weeks" is sufficient, objectively, to state a claim for cruel and unusual punishment." Defs. Bourland, Janda, Giurbino and Tilton's Mot. to Dismiss at 12-13.

In his FAC, Plaintiff alleges Tilton succeeded Defendant Woodford as Director/Secretary of the CDCR "from April 2006" and that he "continued the last weeks of Plaintiff's

deprivation." FAC at 2, 7-8.  Because Plaintiff does not specify the amount of time he was deprived of exercise as the result of Tilton's continued enforcement of Woodford's previously authorized lockdown, and because he further alleges his exercise privileges were restored on an unspecified day in May 2006, Defendant Tilton argues Plaintiff has failed to allege the objective requirements of an Eighth Amendment claim against him, *i.e.*, that Tilton personally deprived Plaintiff of something "sufficient[ly] serious." *See, e.g., Lopez*, 203 F.3d at 1132-33; *Allen*, 48 F.3d at 1086.

"Long-term deprivations [of outdoor exercise] are substantial regardless of [medical] effects." *Lopez*, 203 F.3d at 1133 n.15; *see also Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979).  In *Allen*, 48 F.3d at 1082, the Ninth Circuit found an inmate who alleged to have received only 45 minutes of exercise per week over a 6-week period had "met the objective requirement of the Eighth Amendment analysis by alleging the deprivation of ... a basic human need." *Id.* at 1087-88.  In *May v. Baldwin*, 109 F.3d 557 (9th Cir. 1997), the Ninth Circuit held, on the other hand, that "a temporary denial [22 days] of outdoor exercise with no medical effects is not a substantial deprivation." *Id.* at 565.

Thus, even assuming Plaintiff was denied outdoor exercise for a full month after Defendant Tilton became Secretary of the CDCR in April 2006, the Court agrees that a four-week (28-day) deprivation is not a sufficiently "substantial" deprivation to satisfy the objective component of an Eighth Amendment claim. *See Hayward v. Procunier*, 629 F.2d 599, 603 (9th Cir. 1980) (thirty-day emergency lockdown held not to violate the Eighth Amendment); *May*, 109 F.3d at 565 (22 days).  In addition, while Plaintiff alleges to have "suffered headaches, muscle cramps, stress, anxiety and depression" due to the lack of outdoor exercise spanning from August 2005 through May 2006, FAC at 4, he does not attribute any specific medical effect of the last few weeks of his deprivation to Defendant Tilton. *See Iqbal*, 129 S. Ct. at 1949.

For these reasons, Defendant Tilton's Motion to Dismiss for failing to state a claim is GRANTED.

/ / /

/ / /

-11-

1  
2  

## C.    Qualified Immunity

### 1.    Defendants' Arguments

Defendants Bourland, Janda, Giurbino, Woodford and Tilton also seek dismissal of Plaintiff's claims on grounds that they are entitled to qualified immunity.  *See* Mem. of P&As in Supp. of Def. Bourland, Janda, Giurbino and Tilton's Mot. to Dismiss at 14-18; Mem. of P&As in Supp. of Def. Woodford's Mot. to Dismiss at 3-6.

Defendants acknowledge that this Court previously rejected similar claims to qualified immunity at the motion to dismiss stage, finding that claims involving a prisoner's right to exercise, "require a full consideration of context, and thus a fully developed record."  *See* April 22, 2010 Order [Doc. No. 39] at 7-8 (citing *Richardson*, 594 F.3d at 672).  However, Defendants now ask the Court to "take judicial notice of the findings of fact" set forth in *Norwood v. Woodford*, 661 F. Supp. 2d 1148 (S.D. Cal. 2009) (hereafter "*Woodford*"), and conclude, as Judge Hayes did in that case, that Plaintiff's Eighth Amendment rights were not violated, and that they therefore are entitled to qualified immunity.  Defendants further assert that *Richardson*'s reliance on the need for a "fully developed record" is inapplicable in this case because that court did not reach the question of qualified immunity.  Because Defendants *do* assert a qualified immunity defense here, they argue the Ninth Circuit's decision in *Norwood*, not *Richardson,* "is the [more] appropriate precedent for analyzing" this case.  *See* Def. Bourland, Janda, Giurbino and Tilton's Mem. of P&As in Supp. of Mot. at 17-18; Def. Woodford's P&As in Supp. of Mot. at 3-6.  Finally, Defendants claim qualified immunity because they were "acting on the authority of duly enacted regulations," specifically CAL. CODE REGS., tit. 15 § 3383(b) and (d).  *See* Def. Bourland, Janda, Giurbino and Tilton's Mem. of P&As in Supp. of Mot. at 18.[3]

/ / /  
/ / /  

---

[3]  The Court can reject this argument out of hand, for "the mere existence of ... a regulation is not an automatic shield against a civil rights suit."  *Foster*, 554 F.3d at 816 (citing *Cooper v. Sheriff*, 929 F.2d 1078, 1083 (5th Cir. 1991)) (rejecting defendants' claim to qualified immunity based on a memo outlining in-cell feeding policies which plaintiff alleged violated clearly established law).

### 2.   Standard of Review

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When presented with a qualified immunity defense, the central questions for the court are:  (1) whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the Defendant's conduct violated a statutory or constitutional right;  and (2) whether the right at issue was "clearly established" at the time it is alleged to have been violated.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although *Saucier* originally required the Court to answer these questions in order, the U.S. Supreme Court has recently held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201.  Similarly, if the Court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation.  *Pearson*, 129 S. Ct. at 818.

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  *Saucier*, 533 U.S. at 200.  However, when facts necessary to establish a qualified immunity defense require consideration of matters outside the complaint, a qualified immunity defense may not be amenable to a Rule 12(b)(6) motion.  *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) ("Rule 12(b)(6) dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies.") (citing *Jensen v. City of Oxford*, 145 F.3d 1078, 1085 (9th Cir. 1998)); *see also Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (holding that, in light of the fact that all well-pled allegations in the complaint must be regarded as true on a motion to dismiss, "dismissal [on qualified immunity grounds] for failure

to state a claim under 12(b)(6) is inappropriate.").  The court is usually "not equipped at this stage to determine whether qualified immunity will ultimately protect [the defendant].  Those issues must be resolved at summary judgment or at trial." *Id.*

### 3.   Defendant Tilton

First, because the Court has found, for the reasons set forth above, that Plaintiff has failed to allege facts sufficient to show that Defendant Tilton's continued denial of his outdoor exercise from April 2006 through May 2006 was "sufficiently serious" to constitute a valid Eighth Amendment claim, it need not further decide whether Tilton is entitled to qualified immunity. *See Saucier*, 533 U.S. at 201 (if the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity.").

### 4.   Bourland, Janda, Giurbino and Woodford – Constitutional Violation

Defendants Woodford, Bourland, Janda and Giurbino argue that the allegations in Plaintiff's Amended Complaint "fail to show that any Defendant caused a constitutional violation which was clearly established *in the circumstances in which they acted*."  Defs.' Bourland, Janda, Giurbino & Tilton's Mem. of P&As in Supp. of Mot. at 14; Def. Woodford's Mem. of P&As in Supp. of Mot. at 3.  Instead, they argue Plaintiff's claims "portray prison officials who were trying to restore order, as well as all aspects of normal programming, at the earliest possible time."  Defs.' Bourland, Janda, Giurbino & Tilton's Mem. of P&As in Supp. of Mot. at 14.  All Defendants then ask the Court to consider Plaintiff's allegations in conjunction with Judge Hayes' decision in *Woodford*, to look to the Ninth Circuit's decision in *Norwood*, not *Richardson*, and to conclude that "there was no constitutional violation." *Id.*; Def. Woodford's Mem. of P&As in Supp. of Mot. at 3-4.

In his FAC, Plaintiff alleges he was confined to a double bunk cell twenty-four hours a day, seven days a week, from August 2005 through May 2006.  FAC at 4, 6, 10.  During this time, Plaintiff alleges he was only "allowed to exercise outdoors once in March 2006," and to have suffered physically as a result. *Id.* at 4.  The Court finds these allegations, taken in light most favorable to Plaintiff, sufficient to satisfy the objective element of an cruel and unusual

1  punishments claim. *See Lopez*, 203 F.3d at 1132-33 (finding at motion to dismiss stage prisoner

2  who alleged a prohibition on outdoor exercise lasting six weeks was "sufficiently serious" under

3  the Eighth Amendment); *Saucier*, 533 U.S. at 201.

4       Next, Plaintiff must "make a subjective showing that the deprivation occurred with

5  deliberate indifference to [his] health or safety." *Foster*, 554 F.3d at 812. This requires him to

6  allege Defendants were aware of a "substantial risk of serious harm." *Thomas*, 611 F.3d at 1150.

7  Plaintiff may satisfy this element by making allegations which show "the risk posed by the

8  deprivation [was] obvious," and that Defendants "had no 'reasonable' justification for the

9  deprivation, in spite of that risk." *Id.* (quoting *Farmer,* 511 U.S. at 844).

10      Here, Plaintiff alleges "the disturbance" which prompted the lockdown was "contained

11  and controlled by October 10, 2005," and Defendants afterward "had an alternative means to

12  provide safety and security and still provide outdoor exercise," yet they "continued the

13  deprivation ... not to prevent a disturbance," but "in bad faith" and "as a means to punish" and

14  "deter[] ... future staff assaults." FAC at 7, 10. Plaintiff claims Defendants knew he was

15  suffering due to the CDC 602 grievance he submitted, and that Defendants were aware from

16  "pre-existing case law" that outdoor exercise is "a constitutional right." FAC at 4-5. Plaintiff

17  further asserts Defendants could have lifted exercise restrictions sooner, and in support, points

18  to "other elements of normal program" which were gradually restored once "searches and

19  interviews [were] conducted," especially for inmates like him who "were not part of the

20  investigation." *Id.* at 6, 8, 10.

21      Defendants Bourland, Janda, Giurbino and Woodford contend however, that these

22  allegations are insufficient to show the deliberate indifference required to support his Eighth

23  Amendment claim and that they instead merely "portray prison officials who were trying to

24  restore order." *See* Bourland, Janda, Giurbino and Tilton's Mem. of P&As in Supp. of Mot. at

25  15. Defendants contend Plaintiff has failed to state a claim because the "qualified immunity

26  inquiry is highly context-sensitive," and his allegations fail to show "it would be clear to a

27  reasonable officer that denying outdoor exercise was unlawful 'in the situation he confronted.'"

28  *Id.* (quoting *Norwood*, 591 F.3d at 1068). And in order to describe the situation they confronted,

Defendants ask this Court to "take judicial notice of the findings of fact" in *Woodford*, which is "full of details" showing how prison officials at CAL during the lockdown at issue in this case "attempted to return to normal programming, but faced additional indications of ongoing violence each time they did." *Id.* at 18.

A court may take judicial notice of the existence of another court's opinion. *Cal. ex rel. RoNo, LLC v. Altus Fin. S.A.*, 344 F.3d 920, 931 (9th Cir. 2003). However, "a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983); *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) ("[T]aking judicial notice of findings of fact from another case exceeds the limits of [Federal] Rule [of Evidence] 201."). Thus, while this Court may eventually have before it evidence similar to that considered by Judge Hayes in a similar situation, it cannot simply take "judicial notice" of findings of fact and conclusion of law made by another district court *at summary judgment* when deciding a Motion to Dismiss brought pursuant to FED.R.CIV.P. 12(b)(6) in a separate case filed by a different Plaintiff. *See Wyatt*, 315 F.3d at 1114 n.5 ("[A] court may not take judicial notice of findings of fact from a different case for their truth.").

In a similar vein, Defendants ask this Court to compare Plaintiff's allegations and their claim to immunity to those before the Court in *Norwood*, and to distinguish them from *Richardson* because only "*Norwood* dealt with the 'rigorous and defendant-friendly rules of qualified immunity.'" Woodford's Mem. of P&As at 4; Bourland, Janda, Giurbino and Tilton's Mem. of P&As at 17. Defendants claim that because *Norwood,* and not *Richardson*, is "controlling," they, like the Defendants in *Norwood* are entitled to qualified immunity. Def. Woodford's Mem. of P&As in Supp. of Mot. at 4-5.

In *Norwood*, the plaintiff alleged an Eighth Amendment violation based on the deprivation of outdoor exercise at CSP-Sacramento "during four separate extended lockdowns over the course of two years." 591 F.3d at 1065. Defendants presented evidence that these lockdowns were implemented as the result of "a series of inmate-on-inmate attacks, including

a homicide" as well as "series inmate assaults on staff," culminating in an attempted murder of an officer. *Id.* After "the fourth major assault on staff in a 19-month period, officers locked down all inmates and declared a state of emergency." *Id.* Despite ongoing violence at the prison, defendants' efforts to investigate the source of each incident, and their attempts to "restore[] normal programs," a jury found that the defendants had violated Norwood's Eighth Amendment right to outdoor exercise. *Id.* at 1066.

The Ninth Circuit vacated the jury's verdict, finding error in the district court's refusal to include a jury instruction requiring them to defer to "prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Id.* at 1067 (quoting *Farmer*, 511 U.S. at 845). Rather than remanding the case for new trial, however, the Ninth Circuit decided the defendants were entitled to qualified immunity. *Id.* at 1067-68.[4]

Specifically, the Court found "three factors weigh[ed] heavily" in support of qualified immunity: the "highly context-sensitive" inquiry involving the situation confronting the officer, *id.* at 1068; prison officials' "duty to keep inmates safe, and in particular to protect them from each other," *id.* at 1069; and the deference afforded prison officials "when balancing the obligation to provide for inmate safety against the duty to accord inmates the rights and privileges to which there are entitled." *Id.* After considering the evidence in the record, the Ninth Circuit concluded "a reasonable officer could have believed that restricting Norwood's outdoor exercise was consistent with the Eighth Amendment." *Id.* at 1070. In so finding, the Court found relevant defendants' "substantial reasons for imposing the lockdowns," the fact that

---

[4] The Ninth Circuit's decision to reach the issue of qualified immunity in *Norwood* is in question, however, given the Supreme Court's recent decision in *Ortiz v. Jordan*, __ S. Ct. __, 2011 WL 197801 (U.S. Jan. 24, 2011) (No. 09-737) (finding defendants' failure to file a motion seeking judgment as a matter of law as to their claims of qualified immunity, either before the case was submitted to a jury pursuant to FED.R.CIV.P. 50(a) or after the verdict was rendered pursuant to FED.R.CIV.P.50(b), deprived the appellate court of its "warrant to upset the jury's decision on the officials' liability.") *Id.* at *6. In *Norwood*, as in *Ortiz*, the district court denied defendants' motion for summary judgment "finding that the qualified immunity defense turned on material facts genuinely in dispute," *id.* at *2; *Norwood*, 591 F.3d at 1076 (Thomas, J., dissenting); thus, in both cases, it appears defendants are obligated to file Rule 50 motions in order to "preserve [a] post-trial assertion of qualified immunity for appeal." *Norwood*, 591 F.3d 1076 (Thomas, J. dissenting); *Ortiz*, __ S. Ct. at __, 2011 WL 197801 at *6. Indeed, one of the questions presented in the petition for certiorari which remains pending in *Norwood* asks "[w]hether the Ninth Circuit erred in granting the prison officials qualified immunity." *Norwood*, 78 U.S.L.W. 3612 (April 7, 2010) (No. 09-1215).

1    the plaintiff "offered no evidence that the lockdowns were meant to be punitive or were

2    otherwise implemented in bad faith," *id.* at 1069, the defendants' need to "act decisively to stop

3    the violence" after one prisoner had died and other prisoners and guards were severely wounded,

4    *id.,* and the former warden's testimony that as the prison "incrementally unlocked and released

5    [prisoners] to the small yards for exercise ... violence continued to happen." *Id.*

6         In *Richardson*, decided soon after *Norwood*, the Ninth Circuit again reviewed a prisoner's

7    Eighth Amendment claim based on the deprivation of outdoor exercise during a serious of

8    lockdowns at High Desert State Prison beginning in November 2002 and lasting, on and off,

9    until August, 2003.  *Richardson*, 594 F.3d at 669-70.  The district court granted summary

10   judgment for the defendants, but the Ninth Circuit reversed, noting the "context-sensitive nature

11   of this type of claim," distinguishing *Norwood* because the district court did not reach the

12   qualified immunity issue, and concluding that while prison officials "must have [] discretion to

13   deal with disruption and ... deserve deference in their exercise of this discretion,[,] ... the facts

14   justifying the exercise of discretion remain[ed] to be established at trial." *Id.* at 672 (citing *Bell*

15   *v. Wolfish*, 441 U.S. 520 (1979); *Norwood*, 591 F.3d at 1066-67). *Richardson* makes clear that

16   "as in *Norwood*, claims involving a prisoner's right to exercise require a full consideration of

17   context, and thus, a fully developed record." *Id.*

18        Even more recently, in *Thomas*, the Ninth Circuit reversed another district court's

19   decision to grant summary judgment for prison officials at Salinas Valley State Prison who

20   deprived the plaintiff outdoor exercise for more than a year.  611 F.3d at 1146.  In *Thomas*, a

21   lockdown initially imposed after an inmate used a homemade knife to stab two correctional

22   officers was modified to restore exercise after approximately three months–but only for inmates

23   who agreed to "sign a pledge" that they were willing to follow a program review process. *Id.*

24   at 1147.  Plaintiff objected and claimed defendants' subsequent refusal to restore his exercise

25   privileges for "almost 14 months" constituted cruel and unusual punishment. *Id.* at 1148-49.

26        As in *Richardson*, the district court granted defendants' motion for summary judgment,

27   finding that while the plaintiff's deprivation was "sufficiently serious," he failed to demonstrate

28   a triable issue of fact as to the defendants' deliberate indifference under the circumstances. *Id.*

1    at 1146.  On appeal, the Ninth Circuit "agree[d] with the district court's conclusion that the

2    prison officials' denial of out-of-cell exercise for such an extended period was 'sufficiently

3    serious' to constitute a valid Eighth Amendment claim, but reject[ed] the district court's other

4    rulings," and found "as a matter of law [that] the serious risk to Thomas's health ... was obvious"

5    and that "material factual issues exist[ed] as to whether the prison officials' actions were

6    reasonable, in light of Thomas's limited disciplinary record, the security conditions at the prison

7    for the last 11 of the 14 months that [he] was deprived of exercise, and [their] willingness to ...

8    resume the regular course of exercise upon [Plaintiff's] signing the formal pledge form."  *Id.*

9            Taken together, *Norwood*, *Richardson* and *Thomas*, all binding precedent, make clear that

10   courts must take care to consider the "full consideration of context," when deciding whether the

11   Eighth Amendment has been violated, *and* whether the prison official defendants may be entitled

12   to qualified immunity.  *Richardson*, 594 F.3d at 672.  All three cases involve in-depth analyses

13   of the impetus for a prisoner's initial deprivation, the conditions justifying its length and

14   severity, the safety and security of the prison, as well as considered deference to prison officials'

15   "unenviable task[s]."  *Norwood*, 591 F.3d at 1067-69 (citation omitted).  However, all three

16   cases are distinguishable from this case in one procedural, but critical way:  in all three, the

17   courts (both trial and appellate) had before them *evidence* proffered by the parties either on

18   summary judgment or at trial.  Defendants Bourland, Janda, Giurbino and Woodford, however,

19   have not filed a motion for summary judgment and this case is not yet ready for trial;  they have

20   merely filed a motion pursuant to FED.R.CIV.P. 12(b)(6) seeking dismissal on grounds that

21   Plaintiff has failed to allege an Eighth Amendment violation.

22           As noted above, to sufficiently allege an Eighth Amendment violation, Plaintiff must

23   "objectively show that he was deprived of something 'sufficiently serious,'" and "make a

24   subjective showing that the deprivation occurred with deliberate indifference to the inmate's

25   health or safety."  *Foster*, 554 F.3d at 812 (quoting *Farmer*, 511 U.S. at 834).  Assuming

26   Plaintiff's factual allegation true, as it must at the motion to dismiss stage, this Court finds that

27   Plaintiff's Amended Complaint proffers "enough facts to state a claim to relief that is plausible

28   on its face," and that he has sufficiently alleged both the objective and subjective components

of an Eighth Amendment violation.  *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949; *Saucier*, 533 U.S. at 201.

### 5.      Clearly Established Law

Because the Court has found Plaintiff's FAC adequately alleges an Eighth Amendment violation based on a prolonged deprivation of outdoor exercise, it next decides whether Defendants Bourland, Janda, Giurbino and Woodford are nevertheless immune to Plaintiff's claims for damages, *i.e.*, whether or not the contours of Plaintiff's rights under the Eighth Amendment were sufficiently clear such that reasonable prison officials in their position would have understood that depriving Plaintiff of all access to outdoor exercise for nearly nine months violated that right.  *See Saucier*, 533 U.S. at 202.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *id.* at 202, or "whether the state of the law [at the time of the challenged action] gave 'fair warning' to the officials that their conduct was unconstitutional."  *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).  "Precedent directly on point is not necessary to demonstrate that a right is clearly established."  *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001).

The Ninth Circuit has "uniformly stress[ed] the vital importance of exercise for prisoners," *Thomas*, 611 F.3d at 1152; indeed "for over thirty years, [the Court has] emphasized that 'some form of regular outdoor exercise is extremely important to the psychological and physical well-being of ... inmates." *Id.* at 1152 (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)).  In *Thomas*, the Ninth Circuit found that *Spain* and its progeny, as well as Cal. Code Regs., tit. 15 §§ 1065, 3322(c) and 3343, all which "strictly regulate[] ... 'regular outdoor exercise,'" and "ordinarily require" prison officials in California to provide inmates in general population with at least three hours of exercise per week, inmates in segregation with at least one, and prohibit the denial of outdoor exercise as a disciplinary measure absent extreme circumstances, were enough to find that prison officials "were aware as a matter of law of the potential consequences of depriving an inmate of out-of-cell exercise for an extended period of

time." *Thomas*, 611 F.3d at 115; *Richardson*, 594 F.3d at 672 ("If the prison allots a standard number of hours per week for exercise, the prison officials are aware that denial of this exercise for a substantial period creates an excessive risk to a prisoner's health.").  While the Courts in both *Thomas* and *Richardson* went on to find that genuine issues of material fact existed as to whether the prison officials acted reasonably in light of all the circumstances, *Thomas*, 611 F.3d at 1153-56; *Richardson*, 594 F.3d at 672, this Court finds that the state of the law requiring that prisoners not be deprived of some access to outdoor exercise for extended periods was sufficiently clear to put Defendants Bourland, Janda, Giurbino and Woodford "on notice" that continuing to deprive him of that exercise for more than 9 months was unlawful. *Clement*, 298 F.3d at 906.

Whatever justifications for Plaintiff's deprivation Defendants may later proffer in this case, there is no question that prison officials would violate the Eighth Amendment prohibition of cruel and unusual punishments if they deprived an inmate of outdoor exercise for nine months in the absence of any continuing violence, or if they did so relying on "inconsequential logistical concerns," or in "bad faith." *See Allen*, 48 F.3d at 1088; *Thomas*, 611 F.3d at 1156; *cf. Norwood*, 591 F.3d at 1067 (noting "no evidence that the lockdowns were meant to be punitive or were otherwise implemented in bad faith."). Plaintiff makes those allegations here:  he claims Defendants prolonged the denial of outdoor exercise "not to prevent a disturbance" but instead, in "bad faith" and in order "to punish." FAC at 6, 10.  Specifically, Plaintiff contends "after all searches and interviews has already been conducted" related to the initial lockdown, Defendants refused to lift his exercise restrictions despite a CDC 602 grievance, the fact that he "was never interviewed and was allowed to return to work," and was "not part of the investigation" into the violence which prompted the lockdown.  *See* FAC at 7, 10.

Thus, while the Court notes "a resolution of the factual issues may well relieve the prison officials of any liability in this case," *Clement*, 298 F.3d at 906, *Saucier* instructs the Court at this stage of the proceedings to presume the Plaintiff's well-pleaded facts are true. *Saucier*, 533 U.S. at 201.  Assuming they are, this Court finds both that Plaintiff has sufficiently alleged a violation of the Eighth Amendment and that it would be clear to a reasonable officer in

Defendant Bourland, Janda, Giurbino and Woodford's position that to continuing to deny him access to outdoor exercise, in light of the circumstances as alleged, would violate clearly established law. *Saucier*, 533 U.S. at 202; *Thomas*, 611 F.3d at 1152-1156. While the Court is cognizant that prison officials are generally entitled to deference in dealing with institutional safety issues, *see Norwood*, 591 F.3d at 1069-70, the Court currently has before it only Plaintiff's Amended Complaint. Thus, because the record is not "fully developed," it is not clear as a matter of law at this stage of the proceedings whether Defendants are entitled to the qualified immunity they seek. *See Richardson*, 594 F.3d at 672.

For these reasons, Defendants' Bourland, Janda, Giurbino and Woodford's Motions to Dismiss [Doc. Nos. 45, 49] must be DENIED.

## IV.   Conclusion and Order

For all the foregoing reasons, the Court hereby:

(1)   **GRANTS** Defendant Tilton's' Motion to Dismiss for failure to state an Eighth Amendment claim pursuant to FED.R.CIV.P. 12(b)(6);

(2)   **DENIES** Defendants Bourland and Janda's Motion to Dismiss Plaintiff's Eighth Amendment claims against them for failing to state a claim pursuant to FED.R.CIV.P. 12(b)(6); and

(3)   **DENIES** Defendants Bourland, Janda, Giurbino and Woodford's Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6) based on qualified immunity.

**IT IS FURTHER ORDERED** that Defendants Bourland, Janda, Giurbino and Woodford shall file an to Answer Plaintiff's Amended Complaint within the time provided by FED.R.CIV.P. 12(a)(4)(A).

**IT IS SO ORDERED.**

DATED:  March 28, 2011

Honorable Barry Ted Moskowitz
United States District Judge

-22-